No. 234125. Counsel, you may proceed. Good morning, and may it please the Court. My name is Casey Denaro, and I'm a student attorney representing the Plaintiff's Appellants. I'm here today with Nicholas Lutz, my supervising attorney. On August 13, 2017, Patrick Harmon, Sr. was pedaling his bike north when an officer stopped him. Less than 10 minutes later, he lay bleeding out after Officer Clinton Fox, without warning, shot him three times. This appeal, which arises from the grant of summary judgment on the basis of qualified immunity, represents the second time that the Court below has improperly denied Mr. Harmon's family the right to try a case before a jury. This Court should reverse the grant of summary judgment for three reasons. First, the District Court erred when it misapplied the summary judgment standard. Next, the District Court erred when it did not consider the estate's evidence that Mr. Harmon was unarmed. Third, the District Court erred when it improperly analyzed the larceny factors, especially the hostile motions and manifest intentions factors. The mere fact that defendants have raised qualified immunity does not alter the summary judgment analysis. In fact, in Tolan v. Cotton, the Supreme Court admonished that courts have an obligation to view the facts in the light most favorable to the non-moving party on both prongs of the qualified immunity analysis. Defendants advocate for a heightened summary judgment standard, one that they support with a misapprehension of Cox v. Glantz. Even in Cox v. Glantz, even in Cox v. Glantz, this Court took special care to view the facts in the light most favorable to the plaintiff, noting that the District Court's error there was merely the failure to apply the second prong of the summary judgment. Counsel in Cox v. Glantz, would you agree that the Court did require the plaintiff to incur the burden on both of the prongs of qualified immunity, irrespective of which prong or prongs the defendant relied on? Yes, Your Honor, the plaintiff did have an obligation to provide facts sufficient to support a finding on both prongs. However, that does not substantially differ from the standard summary judgment requirement that the non-moving party must point to facts on the record that would support a jury verdict in the non-moving party's favor. This Court, as you know, Judge Bacharach, has already considered the facts of this case and has concluded that both that under the facts brought forth by the estate, that Officer Fox violated Mr. Harmon's right to be free from excessive force, and that that right was clearly established at the time of the shooting. Can I ask you, do you mind if I ask you one question about a potential wrinkle that might differentiate this case, I would say, from Harmon 1? In Harmon 1, on a 12b-6, the panel basically disregarded the fact that the knife was right there when Mr. Harmon, you know, lay on the ground, because it wasn't in the complaint. Now, on summary judgment, we obviously have the evidence, you know, we see from the video that the knife was laying in close proximity to Mr. Harmon. And with the second point that you were going to raise, that he was unarmed, don't we, for all practical purposes, know that he was, in fact, armed with that knife? Otherwise, it would have been quite a bizarre coincidence for him to lay right there where there happened to be a knife. Isn't that a significant difference between this and Harmon 1? Ultimately, Your Honor, taking your question and each piece of your question in turn, no. The mere presence of the knife does not in and of itself foreclose the possibility that a reasonable jury viewing the body camera footage could determine that Mr. Harmon was not holding a knife. As a matter of fact, his hands are plainly visible on the footage. And yet, despite the fact that the footage shows, for example, his necklace, which was smaller than the 4-inch blade later found on the scene, in the very same frames, no knife is visible. Counsel, I read your briefs to say that really there's still a genuine issue of material fact as to not just whether or not the knife was possessed, but maybe how it was used or brandished in a threatening manner. Is that accurate? And I'm thinking of one of our cases, Tenorio, where we discuss it's not just the presence of a knife, but how it was used. Can you help me understand your argument in that regard? Yes, Your Honor. If we are to take the district court's version of facts in regard to the knife, even so under Larson, the court has an obligation to consider whether Mr. Harmon made hostile motions with that knife. These motions are motions such as cutting, stabbing, or slicing. The mere possession of a knife is not inherently hostile under this court's jurisprudence. And I think the district court said there wasn't a scintilla of evidence in this regard, but what would you point to in the record that is evidence that would suggest that Mr. Harmon, even if he possessed the knife, wasn't brandishing it and using it in a threatening manner? I would point first and foremost to the body camera footage. A reasonable jury could view the footage showing Mr. Harmon's flight and determine that no such gestures occurred. As a matter of fact, the district court's belief that such gestures occurred is founded on inference. At the summary judgment stage, the court has an obligation to draw all reasonable inferences in favor of the estate as the non-moving party. And while it is possible for a jury to reach a different conclusion, a jury could view the motions that Mr. Harmon made as he was running and conclude that he merely looked back when Officer Fox called out to him, that he continued to sideshuffle away, even as Officer Fox began to fire on him, and that his hands, the motion of his hands, reflected the motions of a man who was running away. So acknowledging your point about summary judgment standard and drawing inferences, isn't it also the case when we're looking at whether Officer Fox thought he saw Mr. Harmon raise a knife before the shooting, don't we have to consider the evidence from the perspective of a reasonable officer? Yes, Your Honor, the Graham v. Conner test does consider the perspective of a reasonable officer on the scene. However, this court recently affirmed in Clerk Lee v. Holcomb that the question of an officer's reasonable mistake as to the presence of a weapon is a jury question. This is in fact in line with the policy behind qualified immunity as an objective test, as the Supreme Court outlined in Harlow v. Fitzgerald. The state of mind almost inherently involves a question of fact because it involves a black box of a person's thoughts. Well, let me just make sure I understand your point then. If Officer Fox was mistaken about seeing a knife, does that automatically mean his perception that he did see one was unreasonable? That is ultimately a question for the jury to decide, Your Honor. And a reasonable jury could conclude that that mistake is unreasonable based on the body camera footage and based on the testimony of the fellow officers on the scene. Officer Smith, in fact, testified in his deposition that not only was he unaware of the presence of a knife at the time of the shooting, but he was completely unaware of it until the local news reported on it weeks later. Officer Robinson's behavior both before and after the shooting also provides circumstantial evidence by which a reasonable jury could conclude that Officer Fox's alleged belief was unreasonable. Officer Robinson testified that it is dangerous to perform first aid next to an open knife, and yet he made no attempt to secure the knife that was found on the grass. Could you address the extent to which your appeal turns on Officer Smith's deposition testimony? Officer Smith's deposition testimony is certainly an important piece of evidence that the jury should take into account. Let me put it this way. If you didn't have Officer Smith's testimony, where would we be? If we didn't have Officer Smith's testimony, we would still have the evidence of the body camera footage. It is one very important piece of the evidence that the jury could consider, but no one piece of evidence alone. Whether Officer Smith's testimony or the footage or the forensics report that was returned after testing the knife alone constitutes the world of facts that this court should consider. If there are no further questions, I would like to reserve the remainder of my time for rebuttal. You mentioned you were going to talk about the Larson factors, and I know we're running out of time, but I'm just curious. Do the Larson factors apply only if Mr. Harmon was armed? The court, to my knowledge, has not explicitly set out whether the Larson factors apply in a situation involving an unarmed person. Because the first two factors make reference to a weapon. That is correct, Your Honor. That has been the estate's reading that Larson is best tailored to situations involving a knife or other weapon. However, the hostile motions and manifest intentions factors, as well as warning and distance, all play a part in evaluating whether a person poses an immediate threat, regardless of whether that person is armed. Thank you, counsel. Thank you, Your Honor. Thank you, Your Honors, and may it please the court. My name is Catherine Nichols, Senior City Attorney representing Salt Lake City and Officer Clinton Fox. Every day, we send our police officers into our cities and our towns, and we ask them to keep order and to protect us. And every day, they put themselves at risk. A routine traffic stop can become a life or death situation in a split second. And that is exactly what happened here. The United States Constitution did not require Officer Fox to gamble with his own life by waiting to see if Mr. Harmon was going to take one single step and stab him. Well, counsel, could you tell us what's different today than the last appeal? In other words, what evidence from discovery and really anything else enables you to overcome the court's earlier decision? Right. There's two things. The first is the legal standard, and the second is, as you said, the factual discovery. In Harmon 1, the court was very clear that its decision was premised on that 12b-6 motion to dismiss standard. It said five times the phrase, at this stage, recognizing that the summary judgment standard would be very different than the motion to dismiss standard. Most notably, at the motion to dismiss stage, the court was required to accept as true many of the plaintiff's allegations. Now, on summary judgment, those allegations fall away. Plaintiffs cannot rely on them. All there is is the evidence that the parties have put forward. And that evidence is slightly different. As Judge Bachrach mentioned, the court in Harmon 1 did not consider the knife on the ground in its analysis. But your client specifically argued in Harmon 1 that the allegations in the complaint were blatantly contradicted by the record relying on the video. So the video was presented, as I recall, by your client in Harmon 1. And the panel obviously, at least implicitly, rejected that, that it wasn't the allegations in the complaint weren't blatantly contradicted by the record. Doesn't that fit nicely into the summary judgment standard since we have to view the evidence in the light most favorable to Mr. Harmon's estate? Not quite, Your Honor. At summary judgment, plaintiff still has to come forward with evidence that's sufficient to create a genuine dispute of material fact. And so here we have the body cam video, but we also have the additional evidence that's been established. So, for example, one of the allegations that Harmon 1 credited is that Mr. Harmon was running away. On summary judgment, we have the testimony of the officers and the knife in the ground. We have other aspects of discovery. We have the autopsy report, right? The autopsy report shows that Mr. Harmon, the two bullets entered Mr. Harmon's back and buttocks area on the left side, traveled through to the right front. If he had been running away, it would have been front to back on the same side. But isn't the inquiry not necessarily whether he's running away or whether he's squared up to the officers, but it's really whether or not he has demonstrated sort of hostile intent in threatening the officers so that they can respond with lethal force. And in that finding in particular, the district court essentially held it against the plaintiff to say that the fact that he was shot in the lower left back indicates he was perpendicular to the officers and not running away. But I'm wondering, why isn't it something in between? The fact that he's shot in the lower left back could also be interpreted to be that, yeah, he's sort of, if he's perpendicular, he could be turning to run away or he could be turning to face them and square up. It certainly doesn't lead me to the conclusion necessarily that he's acting threatening. So why isn't that finding that the district court made an error and why doesn't it, you know, my recitation demonstrate a genuine issue of that material fact? Sure, for two reasons. I want to talk about what the evidence does actually show. But also, and this goes to Judge Matheson's point earlier, you also have to consider the qualified immunity standard, which is what would a, what could a reasonable officer in the circumstances believe, right? It's an objective standard. We don't ask what was Mr. Harmon actually doing or actually intending to do. We ask what a reasonable officer standing there could believe, based on all of the additional circumstances as well. And so here, going back to the factual question and what the body cam shows, we cite some pictures from the appendix. There's a bunch of still frames. I suggest the court look at those closely. We put a couple in our brief on page 43. And what it shows is Mr. Harmon at an angle, right? If I'm going to confront somebody in front of me, I'm probably not going to be hip straight up. I'm going to be in what my dad would call an athletic stance, right? With my foot, my back foot perpendicular, my front foot at an angle. And I'm going to be in this position if I'm confronting someone in front of me. But if you were in that position, you wouldn't be shot in the back. If I was here and somebody was standing there. You can at least, I mean, we could have this discussion and there could be inferences drawn. And I guess the point of that is, if that's true, then why isn't that an issue for the jury? Sorry, if what is true? If your inference, your argument is, if I'm standing as you just demonstrated, then I would be shot in the back. Whereas I observe you and I think, well, if you're in that position, you're not going to be shot in the back. Because again, I think that when you look at those still frame photos from the body cam, right? Mr. Harmon, and let's talk about his hands too, because I think that's an important part of this. When it talks about the, when we're looking at the Larson factor for hostile motions, but also when we're asking the question of whether there's any evidence that a reasonable jury could conclude he wasn't armed, right? Mr. Harmon's arms, one's down and one is up like this. Could a reasonable officer from five feet away believe that that is a stance consistent with brandishing a knife? Well, then why did Officer Smith, looking precisely at his torso area, not see a knife? I'm glad you brought this up because I think to Judge Matheson's point, this is the primary issue. This is plaintiff's primary argument. That because Officer Smith did not see the knife, Officer Fox could not have. And the fact that one officer did not see and perceive everything that happened that Even if the second officer is looking at precisely the same area of the body that Officer Fox says that he had raised the knife for, why, especially viewing the evidence favorably to the Harmon estate, can we possibly just reject out of hand the inference to be drawn favorably to the estate based on Officer Smith's own testimony? Because this court has recognized particularly intense, chaotic situations that officers do not always see everything that happens. In a state of Larson v. Muir and Valverde v. Dodge, plaintiffs made a similar argument that there was a genuine dispute about the threat posed because only one officer in each of those cases shot. And this court rejected that argument because the Supreme Court mandates that the reasonableness analysis is from the perspective of the specific officer who shot. And what do we have here? Officer Fox testified that he believed Mr. Harmon was getting something out of his pocket. And so when Mr. Harmon stopped, planted, and turned back, Officer Fox was focused on finding his hands because he thought, this is what he testified, he thought that he got whatever it was out of the pocket. And so he tracked the hands. He saw the knife. He was five feet away. The knife is up in the air. And Officer Fox fires his weapon very, very quickly. It is not surprising that in that single second, Officer Smith, who testified, he didn't know that Mr. Harmon might be armed. He wasn't thinking about that. All he was thinking about was he had pulled his taser to stop an individual who was fleeing from a felony warrant, to stop him using his taser. Counsel, is it your view that the body cam videos and the still frames that I'm looking at again actually show the knife in Mr. Harmon's hands? On summary judgment, no. I'm not making that argument that you can see it in his hands. What about the audio? The officer testified that they heard Mr. Harmon make threatening comments. You know, I'll cut you with reference to a knife. Having, you know, watched and listened to the video many times, I don't hear that. But is it your view that that audio is able to be captured from this body cam video that we can hear? I believe I can hear. I'll cut you before at around the time that Officer Robinson interacts with Mr. Harmon. But our argument here on summary judgment is not that it's clearly audible on the body cam. But that doesn't defeat the testimony, right? In cases like Pauley v. White, Smart v. City of Wichita, this court has recognized that we only discredit officer testimony when it's inconsistent with other circumstantial evidence. And here, Officer Fox's testimony is entirely consistent with all of the other circumstantial evidence. Well, does that mean we should discredit Officer Smith's testimony? No, Officer Smith didn't see it. And we credit the fact that Officer Smith, in that split second, didn't see it. But, and this is an important part, right? The knife is on the ground. And plaintiffs have offered not a shred of evidence. Well, surely you don't argue that the fact that he had a knife that could have been in his pocket would bear on either the Fourth Amendment inquiry or the second prong of qualified immunity. Rosales clearly says that we apply the larceny factors when someone is armed. So the fact that he was armed, all that does is trigger the larceny inquiry, right? I think both sides have argued under Larson, and I think that is a proper test to apply. I don't think plaintiffs have ever made the argument that the knife was in his pocket and just fell out. Well, they certainly argued that he wasn't brandishing the knife. In Rosales, the person did have a weapon. Admittedly, he had a weapon, a gun. But the fact that he had a gun didn't bear, at least to his detriment, on qualified immunity. The court concluded on summary judgment that he had survived qualified immunity. Right, it didn't in Rosales because what the facts showed is that his hands were nowhere near the gun. He was holding a gun. I think there's some facts in there that he wasn't. He was holding a gun in the lower position, if I remember correctly. I think there is. I might have that wrong. I know there's a case cited in there that talks about having a gun at a lower ready, and perhaps Rosales was as well. Here, in a state of Larson v. Muir, this court said that the individual had his arm up. He had a long knife in his hand with his arm up, raised above his shoulder. From 20, up to 20 feet away. As close as 7, up to 20 feet away. And he had his arm up like this. Page 43 of our brief has the picture. That is the position that Mr. Harmon is in. A reasonable officer could believe that this is consistent with brandishing a knife. Does that mean every reasonable officer would have necessarily concluded that even though we can't see the knife, that the fact that he had his arm raised to his torso area, that he was holding a knife? It's the totality of the circumstances, right? So, in other words, whenever an officer testifies that I saw him hold a knife, I saw him hold a gun, it is the officer who has to act precipitously with only moments to decide. And so, he is always going to get summary judgment on Prompt II of Qualified Immunity. And if the answer is no, that's not right, what differentiates that blanket scenario from this scenario? The answer is no, that's not right. And the difference is the totality of the circumstances that exist in each individual case, right? If there was no knife on the ground, this would be a very different case. It would be about a reasonable mistake. So, the fact that he had a knife somewhere, that is why we should conclude that any reasonable fact finder should have concluded that he was actually brandishing the knife. I think, again, we have to look at all of the facts that are here. This is a felon who is fleeing from police. He does not want to be arrested. He takes off running. He collides. I think the body cam is very clear that he puts his body weight into Officer Robinson. Officer Robinson goes flying. Plaintiffs agree, at the very least, he pushes past Officer Robinson. The officers each hear him make threats about cut or stab. They all see him reaching for his pocket. Plaintiffs have conceded that he was reaching towards his waist. All of those pieces together with the fact that he ends up in this stance, this is not the stance of a man running away from five feet, one step, and he could drive that knife into Officer Fox. And a reasonable officer in those situations, any of us acting reasonably, could believe we were in danger at that moment. We ask that this court affirm. Thank you. Thank you, Counsel. In Poly 3, this court noted that since the victim of deadly force is unable to testify, courts should be cautious on summary judgment to ensure that the officer is not taking advantage of the fact that the witness most likely to contradict the story, the person shot dead, is unable to testify. This case illustrates the importance of considering the evidence as a whole and not merely accepting, as this court described it, the self-serving accounts of the officer. Officer Fox and Salt Lake City noted that it is the estate's burden to provide evidence. The estate has met this burden. Thank you. Counsel, before you sit down, we really haven't said much this morning about clearly established law, and I have one question for you about that. The cases you rely upon, Walker, Zuchel, Zuchel, whatever it's pronounced, and Tenario, didn't those cases involve suspects who were not fleeing, as opposed to this case where we have Mr. Harmon fleeing? Would that disqualify them as clearly established law for this case? No, Your Honor. In Perea v. Bapa, this court noted that plaintiffs do not have to conduct a scavenger hunt to find a case that precisely matches the case in the Fourth Amendment context. I'm sorry to interrupt, but I want to make sure, are you relying on those cases for the argument that they apply here, not because they're factually on all fours, but because of obvious clarity? Are you on that aspect of clearly established law? No, Your Honor. Rather, the material facts of each case clearly establish the proposition that, as this court reminded us just recently in Clerkley, these, these, excuse me, I see that I'm over time. I have a moment. If you could just complete your thought.  As this court reminded us in Clerkley, these cases stand for the proposition that an officer is on notice that he may not shoot a fleeing, excuse me, may not shoot a non-dangerous, unarmed suspect. Thank you. The estate respectfully requests this court to reverse and remand. Thank you. Thank you, counsel. Thanks to both of you for your arguments this morning. The case will be submitted and counsel are excused.